UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
IN ADMIRALTY

_____
                                                    )
HUNTINGTON INGALLS INCORPORATED,     )
                                                    )
            Plaintiff,                              )
                                                    )
VERSUS                                          )
                                                    ) Civil Action No. 1:19-cv-00236-LG-RHW
OHT HAWK AS, OFFSHORE HEAVY           )
TRANSPORT AS, SONGA                        )
SHIPMANAGEMENT LTD, and the M/V HAWK, )
her engines, tackle, apparel, furniture, etc., *in rem,* )
                                                    )
            Defendants.                         )
                                                    )
CONSOLIDATED WITH                        )
                                                    )
IN THE MATTER OF THE COMPLAINT    )
OF OHT HAWK AS, SONGA                    ) Civil Action No. 1:19-cv-671-HSO-JCG
SHIPMANAGEMENT LTD. AND OHT        )
MANAGEMENT AS, AS OWNER AND       )
MANAGING OWNERS OF THE M/V HAWK )
PETITIONING FOR EXONERATION FROM  )
OR LIMITATION OF LIABILITY             )
_____)

**UNITED STATES' CLAIM AND ANSWER TO LIMITATION PETITIONER OHT
HAWK AS, SONGA SHIPMANAGEMENT LTD., SONGA CREWMANAGEMENT
LTD. AND OHT MANAGEMENT AS' COMPLAINT FOR EXONERATION FROM OR
LIMITATION OF LIABILITY AND THIRD-PARTY COMPLAINT**

        Pursuant to the Court's Order of October 22, 2019 (Docket Entry 15), In the Matter of the

Complaint of OHT HAWK AS, Songa Shipmanagement Ltd., Songa Crewmanagement Ltd. and

OHT Management AS, as Owner and Managing Owners of the M/V HAWK Petitioning for

Exoneration From or Limitation of Liability has been consolidated with the above-captioned

case. On information and belief, the United States of America files its Claim and Answer to the

limitation proceeding consolidated herein, pursuant to Supplemental Rule F(5), Fed. R. Civ. P., and a Third-Party Complaint as follows:

## UNITED STATES' CLAIM

The United States of America, for its claim against Limitation Plaintiffs OHT HAWK AS, *in personam,* Songa Shipmanagement Ltd., *in personam*, Songa Crewmanagement Ltd., *in personam*, OHT Management AS, *in personam* (collectively referred to as the "Vessel Interest Petitioners"), and M/V HAWK, her engines, tackle, and appurtenances, etc., *in rem*, as well as pending freight*,* avers upon information and belief as follows:

### Jurisdiction and Venue

1.      This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Fed. R. Civ. P. and within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1395 because the acts alleged in this Complaint occurred in whole or in part in the Southern District of Mississippi.

### Parties

2.      The United States is a sovereign nation authorized to sue under 28 U.S.C. § 1345 (United States as Plaintiff).

3.      OHT HAWK AS, *in personam*, is a foreign corporation with its principal place of business in Oslo, Norway, which at all pertinent times was doing business within the State of Mississippi and this judicial district, and is the registered owner of M/V HAWK.

4.      Songa Shipmanagement Ltd., *in personam*, is a foreign corporation with its principal place of business in Paisley, United Kingdom, which at all pertinent times was doing business within the State of Mississippi and this judicial district, and is the technical manager

and/or a managing owner of M/V HAWK, manning, victualing, and in operational control of said vessel.

5.     Songa Crewmanagement Ltd*., in personam*, is a foreign corporation with its principal place of business in Paisley, United Kingdom, which at all pertinent times was doing business within the State of Mississippi and this judicial district, and is the technical manager and/or a managing owner of M/V HAWK, manning, victualing, and in operational control of said vessel.

6.     OHT Management AS, *in personam*, is a foreign corporation with its principal place of business in Oslo, Norway, which at all pertinent times was doing business within the State of Mississippi and this judicial district, and is the operator, the beneficial owner, and/or a managing owner of M/V HAWK, manning, victualing, and in operational control of said vessel.

7.     M/V HAWK, *in rem*, is a 223 meter long, 56 meter breadth heavy load ocean carrier, flying the flag of Norway, bearing IMO No. 8616556, which at all times pertinent was and is owned and/or operated the Vessel Interest Petitioners, which has, pursuant to Rule E of the Supplemental Rules for Admiralty and Maritime Claims under the Fed. R. Civ. P. (see Exhibit "A", hereto), provided a letter of undertaking from its insurer in the amount of $75 million, in lieu of arrest, to ensure judgment can be attained in this District.

8.     Huntington Ingalls, Inc. ("HII") is the owner of a shipyard, berth and test barge, all located adjacent to the navigable waters of Pascagoula Bay, Pascagoula, MS where it engages in ship building, primarily building warships for the United States Navy.

<u>Facts</u>

9.     USS DELBERT D. BLACK (DDG-119) is a recently-christened, pre-commissioned, Arleigh Burke-class destroyer of the United States Navy.

10.     On 29 March 2019, DELBERT D. BLACK was located adjacent to HII's facilities on the navigable waters of the Pascagoula Bay and was under construction by HII, nearing completion.

11.     On 29 March 2019, M/V HAWK was underway and attempting to berth at HII's facility in Pascagoula to deliver a floating dry dock that was consigned to HII and to be discharged on the water adjacent to HII's shipyard.

12.     On or about 1013 hours on 29 March 2019, as M/V HAWK was approaching the HII berth, a HII test barge was safely and securely moored in an adjacent area of HII's facility, portside abreast to DELBERT D. BLACK where it was supporting work HII was performing on DELBERT D. BLACK.

13.     Without warning to the United States and due in no part the fault of the United States, as M/V HAWK approached the HII berth, M/V HAWK, either due to negligence or lack of care, lost control and maneuvered off a reasonable course of sailing, alliding with HII's test barge and DELBERT D. BLACK, causing significant damage to DELBERT D. BLACK, the HII test barge, the floating dry dock, and HII's wharf facilities.

14.     As a result of the allision, DELBERT D. BLACK suffered a rupture to its hull below the water line causing flooding and serious damage to its mid-ship starboard superstructure.

15.     The flooding aboard DELBERT D. BLACK further caused damage to interior mechanisms aboard DELBERT D. BLACK.

16.     For purposes of the present Claim, the United States currently estimates its damages to be in excess of $15 million including, but not limited to, the cost to repair DELBERT D. BLACK, as well as all consequential damages, delay, disruption, survey costs,

salvage expenses and all other related expenses, costs and pre-judgment interest and other damages that will be proven at trial.

<u>COUNT ONE – THE VESSEL INTEREST PETITIONERS AND M/V HAWK ARE LIABLE <i>IN REM</i> UNDER THE GENERAL MARITIME LAW FOR THEIR CREW AND COMPULSORY PILOT'S NEGLIGENCE.</u>

17.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

18.     The Vessel Interest Petitioners, as owners, operators and/or technical managers of M/V HAWK, and M/V HAWK, *in rem,* are liable to the United States for the damages sustained to DELBERT D. BLACK, as well as delay and disruption damages, which were all caused solely by the fault, neglect, and/or lack of due care on the part of the Vessel Interest Petitioners, as well as the unseaworthiness of M/V HAWK, all of which was in the privity and knowledge of the Vessel Interest Petitioners including but not limited to:

A.     Operating M/V HAWK in a negligent and/or unseaworthy manner;

B.     Operating M/V HAWK without a properly trained and competent crew;

C.     Failure to use a sufficient number of and/or appropriate types of mooring and/or tug lines, having adequate strength and in proper condition, to securely bring M/V HAWK into HII's berth;

D.     Failure to use an adequate number of tugboats of sufficient horsepower to maintain M/V HAWK as it was approaching its berth;

E.     Failure of the captain and crew of M/V HAWK to properly navigate and control the vessel;

F.     Failure of the captain and crew to exercise reasonable care in the operation of M/V HAWK;

G. Failure of the captain and crew of M/V HAWK to take the necessary evasive maneuvers to avoid allision with the test barge and HII wharf facilities;

H. Failure to ensure that M/V HAWK was in all respects fit and seaworthy for its intended purpose and use;

I. Failure to properly train the captain and crew to handle restricted maneuvering conditions;

J. Failure to properly vet and investigate the fitness of the pilot(s); and

K. Other acts of negligence and/or unseaworthiness to be established at trial of this matter.

19. M/V HAWK is liable, *in rem,* for the negligence of the compulsory pilot(s) engaged to bring M/V HAWK to its berth or mooring.

20. If the compulsory pilot(s) is/are unable to pay his/their portion of any judgment rendered against him/them based on his/their negligence on 29 March 2019, then M/V HAWK, *in rem*, must pay the United States for the amount of the judgment unpaid by the compulsory pilot(s).

COUNT TWO – THE VESSEL INTEREST PETITIONERS ARE LIABLE *IN PERSONAM* UNDER THE GENERAL MARITIME LAW FOR THEIR CREW'S NEGLIGENCE.

21. The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

22. The Vessel Interest Petitioners, as owners, operators and/or technical managers of M/V HAWK, and M/V HAWK, *in rem,* are presumed to be at fault in this allision, all as provided for under the application of the Oregon Rule and/or the Louisiana Rule.

23. The Vessel Interest Petitioners had a duty to act as reasonably prudent owners, operators and/or technical managers of M/V HAWK and the crew of the vessel had a duty to act

as reasonably prudent mariners.

24.     The incident of 29 March 2019, and the resulting damages to DELBERT D. BLACK, were caused by the fault, negligence, and/or want of care, on the part of the Vessel Interest Petitioners, the crew, owners, operators and/or technical managers of M/V HAWK or by the unseaworthy condition of the aforementioned vessel or barges.

25.     That negligence caused the United States to incur and to continue to incur, damage, damage assessment and repair costs.

26.     As a result of the Vessel Interest Petitioners' negligence and M/V HAWK's unseaworthiness, the United States is entitled to a judgment against the Vessel Interest Petitioners and M/V HAWK, *in rem*, for the full amount of its damages, including, but not limited to, the cost to repair and DELBERT D. BLACK, as well as all consequential damages, delay, disruption, survey costs, salvage expenses and all other related expenses, costs and pre-judgment interest and other damages that will be proven at trial.

<u>COUNT THREE - THE UNITED STATES HAS A</u>
<u>PREFERRED MARITIME LIEN ON M/V HAWK.</u>

27.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

28.     As a result of the allision, the United States has a preferred maritime lien on M/V HAWK, *in rem,* and a right to arrest said vessel to perfect its preferred maritime lien under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Fed. R. Civ. P.

29.     In lieu of arrest the United States and HII have taken a letter of undertaking valued at $75 million requiring the Vessel Interest Petitioners to file a timely *in rem* appearance on behalf of M/V HAWK.

30.     In the instant limitation proceeding, the United States disputes the Vessel Interest Petitioners' valuation of M/V HAWK and her pending freight.

31.     Based on the foregoing, the United States is entitled to a judgment holding the Vessels Interest Petitioners, jointly and severally liable for all damages sustained by the United States as described herein, plus all expenses, attorneys' fees and pre- and post-judgment interest on all sums awarded.

## UNITED STATES' ANSWER

The United States, for its answer to the limitation complaint filed by the Vessel Interest Petitioners, avers:

1.     The allegations in paragraph 1 are admitted, and the United States further avers that at all pertinent times, OHT HAWK AS was doing business within the State of Mississippi and this judicial district.

2.     The allegations in paragraph 2 are admitted, and the United States further avers that at all pertinent times, Songa Shipmanagement Ltd. was doing business within the State of Mississippi and this judicial district.

3.     The allegations in paragraph 3 are admitted, and the United States further avers that at all pertinent times, Songa Crewmanagement Ltd. was doing business within the State of Mississippi and this judicial district.

4.     The allegations in paragraph 4 are admitted, and the United States further avers that at all pertinent times, OHT Management AS was doing business within the State of Mississippi and this judicial district.

5.     The allegations in paragraph 5 are admitted, and the United States further avers that at all pertinent times, M/V HAWK was present within the State of Mississippi and this judicial district.

6.     The United States denies the allegations contained in paragraph 6.

7.     The United States lacks sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 7 and therefore denies same.

8.     The United States admits the allegations contained in paragraph 8.

9.     The United States denies the allegations contained in paragraph 9.

10.     The United States denies the allegations contained in paragraph 10.

11.     The United States admits the allegations contained in paragraph 11.

12.     The United States lacks sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 12 and therefore denies same.

13.     The United States lacks sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 13 and therefore denies same.

14.     The United States denies the allegations contained in paragraph 14.

15.     The United States admits Vessel Interest Petitioners submitted a Letter of Undertaking from Guard P&I (Bermuda) Ltd. in the sum of $29,360,000, plus interest at six percent (6%) per annum but denies said sum represents the total value of M/V HAWK, her appurtenances, and pending freight or hire.

16.     The United States admits a Letter of Undertaking was posted on April 16, 2019, the terms of which speak for itself.  The United States further avers that in the instant limitation proceeding it disputes the Vessel Interest Petitioners' valuation of M/V HAWK and her pending freight.

17.     The United States denies the allegations contained in paragraph 17.

18.     The United States denies the allegations contained in paragraph 18.

19.     The United States denies the allegations contained in paragraph 19.

20.     The United States admits only that this matter falls within the Court's admiralty and maritime jurisdiction; all other allegations in paragraph 20 are denied.

As to Vessel Interest Petitioners' WHEREFORE paragraph:

(1) The United States disputes the Vessel Interest Petitioners' valuation of M/V HAWK and her pending freight and prays this Court revoke its Order approving the Letter of Undertaking;

(2) The statements of WHEREFORE paragraph (2) do not require a response except that the United States acknowledges the Court has issued a notice to interested parties;

(3) The statements of WHEREFORE paragraph (3) do not require a response;

(4) The United States denies the Vessel Interest Petitioners are not liable for the injuries, losses, deaths and damages occurring as a result of the accident or for any claim therefore in any way arising out of or resulting from the incident;

(5) The United States denies the Vessel Interest Petitioners are entitled to limitation in this matter.  Further, the United States disputes the Vessel Interest Petitioners' valuation of M/V HAWK and her pending freight.

(6) The United States denies the Vessel Interest Petitioners should be awarded any relief.

<u>FIRST DEFENSE</u>

The aforementioned damages were not caused, or contributed to, by fault, negligence, or lack of due care on the part of any officer, agent, or employee of the United States, or anyone for whom the United States is responsible.  Rather, they were caused solely by the fault,

recklessness, unseaworthiness, negligence, and lack of due care of the crew of the M/V HAWK, or through the knowledge, privity, and negligence of the Vessel Interest Petitioners through their officers, agents, employees, servants and/or contractors. Should the Court find otherwise, it may lack subject matter jurisdiction through application of the discretionary function exception.

<u>SECOND DEFENSE</u>

If the Vessel Interest Petitioners are found liable to the United States, such liability exceeds the value of M/V HAWK, including pending freight, due to the fault, recklessness, unseaworthiness, negligence, and lack of due care of the crew of M/V HAWK, or through the knowledge, privity, and negligence of the Vessel Interest Petitioners through its officers, agents, employees, servants and/or contractors.

<u>THIRD DEFENSE</u>

The Vessel Interest Petitioners' Limitation Complaint fails to state a claim upon which relief may be granted in whole or part.

**WHEREFORE**, the United States prays:

1.      That the Vessel Interest Petitioners be denied the right to exoneration from, or limitation of, liability and their limitation complaint dismissed;

2.      That the Vessel Interest Petitioners be adjudged liable, without limitation, to the United States for all losses the United States sustained as a result of the 29 March 2019 incident, including interest, costs, and attorneys' fees;

3.      That if the compulsory pilot(s) is/are found liable for the 29 March 2019 incident and are not able to pay the full amount of any judgment against him/them, then M/V HAWK be held liable, *in rem*, for any and all negligence by the compulsory pilot(s) and that M/V HAWK be ordered to pay to the United States the full amount of any judgment against the compulsory

pilot(s) for which the compulsory pilot(s) are unable to pay, including costs, expenses, and attorneys' fees, and such other relief as the Court may deem proper;

4.     That pursuant to Rule F(7) of the Supplemental Rules for Admiralty or Maritime Claims of the Fed. R. Civ. P. the Court shall cause due appraisement to be made of the value of the Vessel Interest Petitioners' interest in the vessel and pending freight or, in the alternative, the United States, at its discretion, be permitted to commission an independent appraisal of the value of M/V HAWK, including pending freight, and offer evidence of the same for the Court's consideration in setting the limitation amount, should limitation be found to apply;

5.     That the claim of the United States be adjudicated herein, and that the United States be awarded a judgment against the Vessel Interest Petitioners and M/V HAWK, including pending freight, for all damages and losses sustained by the United States as a result of the 29 March 2019 incident described above, including interest, costs, and attorneys' fees; and

6.     The United States additionally seeks whatever other relief that this Court determines is just and proper.

**UNITED STATES' THIRD-PARTY COMPLAINT AGAINST WALTER W. GAUTIER, DANIEL E. WHYTE, MICHAEL C. TORJUSEN, AND SIGNET MARITIME CORPORATION, *IN PERSONAM*, AND SIGNET VICTORY, SIGNET PURITAN, SIGNET VALIANT, SIGNET RELIANCE and SIGNET VIGILANT, THEIR ENGINES, TACKLE AND APPURTENANCES, *IN REM***

The United States of America submits this third-party complaint to join Walter W. Gautier, Daniel E. Whyte, Michael C. Torjusen, and Signet Maritime Corporation, *in personam*, and SIGNET VICTORY, SIGNET PURITAN, SIGNET VALIANT, SIGNET RELIANCE and SIGNET VIGILANT, their engines, tackle and appurtenances, *in rem*, as third-party defendants pursuant to Fed. R. Civ. P. 14(a)(3) and avers upon information and belief as follows:

1.      The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this pleading.

### Jurisdiction and Venue

2.      This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction) and 1345 (giving district courts original jurisdiction of all civil actions, suits, or proceedings commenced by the United States).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1395 because the acts alleged in this third-party complaint occurred in whole or in part in the Southern District of Mississippi. Additionally, this Court, sitting in admiralty has personal jurisdiction over the above-named third-party defendants, and *in rem* jurisdiction over the tug boats listed below along with their respective engines, apparel, tackle, appurtenances, etc.

### Parties

4.      The United States is a sovereign nation authorized to sue under 28 U.S.C. § 1345 (United States as Plaintiff).

5.       Third-party defendants Walter W. Gautier, Daniel E. Whyte, and Michael C. Torjusen are, and were at all relevant times to this action, engaged in the business of providing ship pilotage in the Port of Pascagoula and residing at the following addresses in Jackson County, Mississippi:

GAUTIER, WALTER WARREN JR     11445 HENDERSON CAMP RD
GRAND BAY, AL 36541

WHYTE, DANIEL E     3629 PERRYMAN RD
OCEAN SPRINGS, MS 39564-1049

TORJUSEN, MICHAEL CHARLES     7405 PARK RIDGE DR S
MOSS POINT, MS 39562-6135

6.       Third-party defendant Signet Maritime Corporation ("Signet") is, and was at all times relevant to this action, a Delaware corporation with its principal place of business located in Houston, TX, which is duly qualified to transact business in the State of Mississippi and within the jurisdiction of this Honorable Court.

7.       At all relevant times, Signet was the owner of the following tug boats that were on site for vessel movement and assistance:

A.       Tug SIGNET VICTORY – IMO 8968208

B.       Tug SIGNET PURITAN – IMO 8654273

C.       Tug SIGNET VALIANT – IMO 8964551

D.       Tug SIGNET RELIANCE – IMO 9548677

E.       Tug SIGNET VIGILANT – IMO 9717620

(collectively referred to as the "Signet Tugs").

8.       Upon information and belief, the Signet Tugs are now or during the pendency of process herein will be within this District.

9. Under Fed. R. Civ. P. 19(a)(1), a party must be joined if "(A) in that person's absence the court cannot accord complete relief among existing parties… ."

10. Fed. R. Civ. P. 20(a)(1) allows joinder of a third party if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Facts

11. For transit within the Port of Pascagoula, M/V HAWK was required by law to engage the services of a compulsory pilot.

12. During compulsory pilotage, the pilot directs the navigation of the vessel.

13. On the morning of 29 March 2019, third-party defendants, Gautier, Whyte and/or Torgusen boarded M/V HAWK in preparation for piloting the vessel to HII.

14. At 0830 CDT, M/V HAWK commenced transit of the Pascagoula Bar Channel and proceeded through the Horn Island Pass.

15. After approaching the "Y" of the channel, which is located in the vicinity of buoys Green 35, Red 36 and Green 37 on NOAA Chart 11375, M/V HAWK continued north and met the assist tugs and two of the Signet Tugs were made up to M/V HAWK's stern.

16. Upon information and belief M/V HAWK, experienced difficulty making the turn at buoy Green 51, which as measured on Chart 11375 is located approximately 1,200 feet southeast of the HII berth where DELBERT D. BLACK was moored.

17. On or about 10:12 CDT, third-party defendants Gautier, Whyte and/or Torgusen and/or the M/V HAWK's Master and/or its various crew caused M/V HAWK to allide with a HII test barge moored alongside DELBERT D. BLACK.

18.     In turn, both the HII test barge and M/V HAWK's freight allided with the DELBERT D. BLACK causing damage to the starboard superstructure and puncturing the hull below the waterline.

19.     At all relevant times, third-party defendants, Gautier, Whyte and/or Torgusen were on the bridge of M/V HAWK and serving in the capacity as compulsory pilot(s) of the vessel.

20.     At all relevant times, third-party defendants, Gautier, Whyte and/or Torgusen provided the steering and engine orders and otherwise directed the navigation of M/V HAWK.

21.     At all relevant times, M/V HAWK's Master and/or various crew of the vessel were on the bridge of the vessel.

22.     Repairs to the DELBERT D. BLACK were later performed at HII.

23.     The allision caused substantial physical damage to the DELBERT D. BLACK and caused the United States to incur extensive economic losses which it currently estimates are in excess of $15 million with continuing delay and disruption damage, which amounts will be proved at trial.

COUNT ONE – THIRD-PARTY DEFENDANTS GAUTIER, WHYTE AND/OR TORGUSEN ARE LIABLE UNDER THE GENERAL MARITIME LAW FOR NEGLIGENCE.

24.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

25.     In compliance with Mississippi law, M/V HAWK had onboard third-party defendants Gautier, Whyte and/or Torgusen who were licensed by the Pascagoula Bar Pilots' Association as compulsory pilots.

26.     A compulsory pilot is charged with a high degree of competence, skill and expertise in navigation, ship handling and local knowledge of the particular waters for which he

is licensed.

27.     On the morning of 29 March 2019, third-party defendants Gautier, Whyte and/or Torgusen provided ship course, speed and steerage directions to the Master and crew of M/V HAWK on the bridge of the vessel and thereby assumed the primary responsibility for the safe navigation of the vessel.

28.     As compulsory pilots providing direction for the navigation of M/V HAWK, third-party defendants Gautier, Whyte and/or Torgusen owed to the United States the highest standard of care to navigate M/V HAWK safely and prudently.

29.     On 29 March 2019, on or about 10:12 CDT, while maneuvering in the vicinity of the HII shipyards and under the direction of the compulsory pilots as required by Mississippi law, third-party defendants Gautier, Whyte and/or Torgusen, and with attendance of the M/V HAWK's Master and/or various crew of the vessel, M/V HAWK was negligently caused or allowed by third-party defendants and/or the Master and/or various crew of the vessel to strike or allide with a test barge, resulting in extensive damage to the DELBERT D. BLACK, and loss of use for said vessel, and other damages as set forth herein.

30.     The allision occurred while the vessel was at that time under the direction of compulsory pilots, M/V HAWK's Master and/or various crew of the vessel, and/or the Signet Tugs.

31.     When a vessel strikes an object while under the direction of a compulsory pilot, there is a presumption that the pilot was negligent.

32.     The aforesaid incident, and all damages and losses resulting therefrom, were in no way caused, or contributed by any fault or neglect on the part of HII, the United States or the DELBERT D. BLACK, but were caused in whole or in part by the compulsory pilots, M/V

HAWK's Master and/or crew, and/or the Signet Tugs in the following respects, among others which will be developed more fully at trial as follows:

    A.   Third-party defendants Gautier, Whyte and/or Torgusen failed to take proper navigational precautions while guiding M/V HAWK thereby causing the vessel to allide with a test barge, which in turn made contact with the DELBERT D. BLACK;

    B.   Third-party defendants Gautier, Whyte and/or Torgusen failed to have the requisite knowledge of a competent compulsory pilot to safely navigate or pilot M/V HAWK;

    C.   Failed to familiarize themselves with the maneuvering capabilities of M/V HAWK;

    D.   Failed to recognize the unsafe speed at which M/V HAWK was maneuvering;

    E.   Failed to properly familiarize themselves with available charts, records, or publications; and

    F.   Failed to exercise the high degree of care and competence required of a pilot.

33.    As a direct result of third-party defendants' negligence, proportionate fault, breach of obligations, duties and undertakings as aforesaid, the United States has incurred damages, losses and expenses in the estimated amount of $15 million which is as nearly as exact as the same can now be ascertained.

34.    The United States further claims attorneys' fees, pre-judgment interest and court costs.

<u>COUNT TWO – THIRD-PARTY DEFENDANTS SIGNET AND SIGNET TUGS ARE LIABLE UNDER THE GENERAL MARITIME LAW FOR NEGLIGENCE.</u>

35.    The United States refers to and incorporates by reference, as though fully set

forth herein, each and every foregoing paragraph of this claim.

36.     At all times material while M/V HAWK was entering the Port of Pascagoula and maneuvering in the Pascagoula River, prior to and at the time of the incident as aforesaid, third-party defendant Signet supplied assisting tugs to the vessel to assist in docking, maneuvering and berthing.

37.     At the time of the allision, third-party defendant Signet and the Signet Tugs, *in rem*, provided harbor tug assistance to M/V HAWK, acted as a lookout for the vessel, and were bound by contract or warranty of workmanlike performance to advise or notify the compulsory pilots, Master and/or crew of M/V HAWK if the vessel was outside the channel, outside of sufficient water depth, proceeding in dangerous proximity to known hazards, or any other hazards to navigation that existed at the time.

38.     At all times material, Signet and the Signet Tugs, *in rem*, provided mooring lines made fast to M/V HAWK and were responsible for the condition of said lines, tending said lines during the operation, ensuring said lines were fit for their intended purposes and sufficient to withstand the tension required to position M/V HAWK.

39.     Third-party defendant Signet and the Signet Tugs, *in rem,* failed to provide proper lookout for M/V HAWK as the vessel approached the HII slip, contributing to the allision.

40.     In addition, as M/V HAWK approached the HII slip, one of the mooring lines from the Signet Tugs that was made fast to M/V HAWK's stern parted.

41.     Third-party defendants Signet and the Signet Tugs, *in rem*, failed to ensure its mooring lines were fit for their intended purposes.

42.     As a result of the foregoing, third-party defendant Signet and the Signet Tugs*, in*

*rem*, are responsible for the DELBERT D. BLACK's damages, repair costs and loss of use, and other damages as claimed herein, based on negligence, breach of warranty of workmanlike performance, breach of contract, and/or breach of duty to perform its obligations in providing reasonably prudent docking assistance.

43.     As a direct result of third-party defendants' negligence, proportionate fault, breach of obligations, duties and undertakings as aforesaid, the United States has incurred damages, losses and expenses in the estimated amount of $15 million which is as nearly as exact as the same can now be ascertained.

44.     The United States further claims attorneys' fees, pre-judgment interest and court costs.

**WHEREFORE**, the United States prays:

A.     That process in due form of law be issued against third-party defendants citing each of them, individually, jointly and severally, to appear and answer all and singular the matters aforesaid;

B.     That this Honorable Court order, adjudge and decree that third-party defendants, individually, jointly and severally in accordance with proportionate or pro rata fault pay the United States the damages sought herein, together with interest thereon and costs;

C.     That process in due form of law be issued pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Fed. R. Civ. P., and that the tugs SIGNET VICTORY, SIGNET PURITAN, SIGNET VALIANT, SIGNET RELIANCE and SIGNET VIGILANT, their engines, tackle and appurtenances, *in rem*, be arrested and held to satisfy the United States' claims, plus interest, costs and attorneys' fees;

D.    That the aforementioned tugs be condemned and sold to satisfy any judgment awarded by the Court herein; and

E.    The United States additionally seeks whatever other relief that this Court determines is just and proper.

DATED:    November 18, 2019

<div align="right">

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

MIKE HURST
United States Attorney
Sothern District of Mississippi


 */s/ Robb Hyde*                             __
ROBB HYDE
JESSICA L. MCCLELLAN
U.S. Trial Attorneys
Aviation & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
(Overnight Courier)
175 N St. NE, 8th Floor
Washington DC, 20002
(Regular Mail)
P.O. Box 14271
Washington, DC 20044
Telephone: (202) 616-4106 (MRH)
Telephone: (202) 616-4022 (JLM)
Facsimile: (202) 616-4159
Email: robb.hyde@usdoj.gov
Email: jessica.l.mcclellan@usdoj.gov

Attorneys for the United States of America

</div>

<u>CERTIFICATE OF SERVICE</u>

I certify that on November 18, 2019, a copy of the foregoing was filed electronically with the Clerk of the Court by operation of the Court's electronic filing system, which will serve an electronic copy to all counsel of record.

<div align="center" style="margin-left:50%">

<u>*/s/ Robb Hyde*</u>
Robb Hyde
Trial Attorney
U.S. Department of Justice

</div>